The first case on the docket for Wednesday, July 15, 2015, is Enby v. White. We have Mr. Roberts and Paige Small. Mr. Roberts, would you like to proceed when you're ready? We are pleased to serve. My name is Chuck Roberts. I'm an attorney from Aldenville, Illinois. I come here today representing the appellant, Count Enby, who seeks a stalking no-contact order in the case. The record is full of information. Obviously, Mr. Enby, my client, and Mr. White, who is the client of Ms. Strong, have a history. This is, I think, the case about the vendetta. My client, Enby, was a supervisor of District 19, and there he was a supervisor of Mr. White. And after Enby retired from the Illinois State Police, Mr. White continued to work at District 19. We had occasion there to investigate Sheriff Hinkle from Wayne County in regards to a case that involved an allegation of improper sexual conduct. Mr. Enby got involved in that case as he was a party to Mr. Hinkle's defense. Mr. Enby spoke to the young lady, and although Enby didn't know her at the time, she had already recanted to a police officer in Charleston. But Mr. Enby didn't know that. He took a statement from her, videotaped it, and I think it's safe to say that statement had something to do with charges not being pursued against Mr. Hinkle. So Mr. White turns around and goes after Mr. Enby for a misdemeanor charge of practicing as a detective without a license. Now that particular charge is true, right? I don't think so, Judge. First of all, we're talking about a criminal charge. I mean, he was disciplined by the Illinois Department of Professional Regulation. That is correct. He would never have been convicted of the crime. Okay. And that's kind of an interesting difference. In fact, I know you're out of practice for many years, and you may have used somebody over the age of 18 to check facts out on a case, make some calls for you, and do something. You're right. Well, regardless of whether that was true or not, the act of reporting that, do you think that's an act that rises to the level of stalking? No, I don't. Okay. So we can remove that as one of the predicate acts. We have to have two acts, right? Correct. But we can remove that. But here's the thing, though. I think it depends on the circumstance. Right. The motive. The occurrence, the motive, yes. Right. But as far as proving or alleging, at least, we're at the pleading stage, right? Correct. So we have to look and determine whether there are two predicate acts. We can remove that one. Yes, I don't have a problem with that. Okay. All right. Okay. So I'm sorry to interrupt. Oh, it's no problem, Judge. I think it's important to get these matters clear. To answer your question, I think it comes back to what things are we indicating are the acts that Mr. White committed, which arise, and there are several of them. Do you think the court in this case, in its earlier order, found one of the predicate acts to exist? Yes. And that was the one at the church? Well, it was the funeral home. I'm sorry. Funeral home. You're correct. But that's the one we're talking about. At the Natal's funeral home, yes. Right. So we have an order of the court that at least says there is one. Right. And then the complaint was amended, I understand? Yes. Okay. So the third amendment complaint contained the one funeral home event that the court found as a matter of law in the case was a predicate act. Is that your allegation? Yes, it is. Okay. So where is the second act? Well, I think, first of all, in leading up to the occurrence of the Natal's funeral home, Mr. White had a conversation with his wife. And in that conversation, his wife told him that Mr. Henry would not be at the Natal's funeral home because he and his wife, she found out, were traveling with the gymnastics club and would not be at the funeral home that day because they would be out of town. Well, that wasn't the case. But the fact that Mr. White and his wife talked is an act. And under the stalking no contact provisions in the state of Illinois, the word out is in that statute, talking about someone can be monitoring them, monitoring them, a person is an act of stalking. And so we think, first of all, that the acts leading up to what took place at the Natal's funeral home are a separate act. Now, if you took the position that that's one act, that the talking with the wife led up to him going to the funeral home and that's one occurrence, we still have other allegations of that. But I think that, to answer your question, that's the first one we saw. Well, and I think the court acknowledged that in its first order, even though it dismissed the second amendment. Well, regarding the Natal's funeral home, yes. Yes. The conversation occurred before. I'm sorry? Yes. The conversation with Mrs. White occurred before. But did the court consider that as all kind of one connected? I'm not sure the judge ever told us that. He may have. I don't know. But I felt like going to the funeral home was a separate act as opposed to talking to his wife. So that would be our first point with regard to that. And then our second point is that I have a question. Sure. On this incident overheard by Richard White's wife, I believe that's paragraph 32 in the third amendment complaint. I don't see Mr. White involved in that conversation. Was he there? Yes. He was there at McDonald's in that conversation? No. Okay. Now I understand. Okay. Paragraph 32 says the wife of Richard White claims to have overheard Don Riggs on a Sunday at McDonald's saying his daughter owned a gymnastics place and that there was a major event that would prevent attendance at the funeral or visitation. Now, you're saying Mr. White was not there when that conversation occurred? That's correct. There's no allegation in this third amendment complaint that he was involved in that? In that conversation, no. But after that conversation, that paragraph leads up to a further allegation that Mr. and Mrs. White spoke after that and that Mr. White found out from his wife at that point that Mr. Henby would not be in payers. Now, that conversation between Mr. and Mrs. White is an act. How is that an act of stalking? Well, the stalking statute has language in it about monitoring someone, and it would be, I think, monitoring someone to discuss whether or not they're doing it. Because essentially you're using a third party, Mrs. White, to obtain information about what Kelly Henby was doing, and that is, given the context of all of this that's occurring between Mr. White and Mr. Henby, that is an effort to monitor his whereabouts that Mrs. White was involved in at that point in time. I have a question also. What about this press release? How are you able to characterize that as an act of stalking? Because it is an act which was designed to intimidate Mr. Henby, to embarrass him, and having your mugshot publicly displayed changes, I think, the public's perception of you now and forever. And under the statute, emotional distress means significant mental suffering, anxiety, or alarm. And I think when you are the owner of a business in Albany, Illinois, and see your picture on the front of the Albany Daily Mail as a mugshot, that is the kind of thing that certainly could cause you emotional distress. And I think the court has to take evidence on that point to determine if there was any emotional distress. Your position is pretty much reliant on the context, as opposed to merely expressing either an opinion or narrating a factual situation to the press. Is that correct? Well, actually, there are facts, Judge, where Mr. White talked to an agent who worked at District 19. He was a deputy. His name was Deputy Hanisch. And Mr. White conveyed to Deputy Hanisch that he needed to get the story out about Mr. Henby being arrested. And that, we feel, is a separate act, which Mr. White did, talking to Hanisch to get this information out to the press. Mr. Henby had already been turned in at the Charleston Police Department, or actually, I think it was Coles County Sheriff's Department. He already had his mugshot taken. He was already apprehended. So there's no reason to get it out to the press in a situation where you have somebody who might flee, or a situation where you have a warrant that's active for somebody. You may have a reason to get certain information out to the press. But in this instance, Agent White's only purpose in getting the information out to the Disclosure Newspaper and the All the Daily Mail was to publicly embarrass Henby. That's all he could have been doing. It's the only thing that makes sense. And so by taking that action of contacting Hanisch there at the office of District 19, saying, you're friends with these people on the press, aren't you? Why don't you get this story out to them about Henby being arrested? That is not police work. That is an effort to embarrass someone, and the stalking statute prohibits that kind of conduct. Certainly, had the All the Daily Mail gone and put it on a police blotter, there would have been a couple of fines, and that wouldn't have been an issue if it was instigated by the newspaper, right? I think that's right, Judge. Clearly a different sort of situation if you have a news reporter who picks up information. Interestingly, I guess the All the Daily Mail is forced to only probably look at the Richland County Circuit Court records, which wouldn't have any information from Coles County. That's an interesting point. How far is Coles County from Richland? Are they right next door? Fifty-eight miles, Judge. Fifty-eight miles. Route 130, you travel 19 to Newton, 19 to Cumberland County, and then 19 on to Charleston. So the fact that it was Coles County as opposed to Richland, you say, is another aggravating event. Yeah, because it pulls something back to Mr. Henby's hometown to seek to embarrass him. We think that's the serious problem with the mugshot and with the story that was published about Henby being arrested for the offense. Could you address the discovery issue, why that's important? Yes, Judge. We tried to have the first subpoena issued to the state police for records, and they didn't respond to it. Talked to a lady who said simply, your subpoena was too specific. You have one date in the subpoena, and based on that, we didn't have anything on that particular date, so we're not giving you anything. So I tried the second subpoena, which was a little more broad, thinking that that might net something about what may exist as communications between Mr. White and others in the department as to what he was doing with Mr. Henby. White was going all the way from District 19 in Carmine up to Coles County to prefer a misdemeanor charge. So we got a motion by the Assistant Attorney General to strike the second one, and the judge, when he struck our second amendment complaint, held that it was moved and we couldn't get the records from the Illinois State Police under the subpoena because there was no case pending. But you were granted leave to amend? Yes. After a reconsideration, we were granted leave to amend. Did amend, did seek another subpoena, and did receive another objection from the Attorney General's office on behalf of the state police. But this time, the attorney who appeared in court on that argument indicated that there are a lot of documents concerning Mr. White and perhaps Mr. Henby, and that this was overly burdensome for him to respond to because there were so many documents. Now, if there are that many documents, hey, I guess I'm surprised. I'd expect maybe to find a few documents, but looking for a smoking gun, I can't imagine the Attorney General's office saying there are a lot of documents, but you don't get to see them. And what information did they give that supported the allegation that it was burdensome? They say there were thousands of documents. She didn't give a number. She said, as I recall, a lot. That's it. Numerous records, something like that. A lot. And I'm truly interested in seeing what those are because that may tell us more about other acts that Mr. White may have committed during this time period that we're not even aware of at this point in time, and that is the significance of getting that subpoena. How can you fully plead your case if you never get a chance to see the state police records of what Mr. White did during this key time period? So, with your questions this morning, you have covered everything I came here to cover this morning, and I thank you for your questions. If you have any other questions, I'd be glad to try to answer them, but you've hit every point to this point. Thank you all. Any questions? No. Thank you. You'll have a chance to have a few moments of. Mr. Mr. Mr. Mr. Good morning, Your Honor. May it please the court. Counsel. I'm headstrong and I represent Mr. White. I had a little difficulty hearing everything that Mr. Roberts said. So if I step over something or mistake something that I thought I heard him say, please stop me. Correct me. I couldn't hear everything. I hope I got the gist of where he was going. I want to make sure I understand. One of the court orders, I think it was in June, the court actually said that they found that there was a one incident of stalking at the funeral home. Do you agree with that? I'm not 100 percent. I believe the point was if we call this an act of stalking, we have one. I'm not convinced that I can't be 100 percent sure that the court said, here's an incident of stalking. This is one. Let's find the second one. I think it was more if there had been an act, this would have been the one. I can't find in the appendix the order dismissing the second amendment. I can see the order dismissing the third. I don't want to take up all your time, but clearly there was some finding by the court in the record that the funeral home was an incident. They did proceed in the future on the basis that – or on the assumption that the court had found that there was one incident. I actually kind of – I would argue, and I've been on the show, which I wasn't, that if you combine that with the overheard conversation from McDonald's, which I think there's no way in the world we can call that an act of conduct by Mr. White, it would actually cut against that being the funeral home situation being an act of conduct, an act of stalking, because he went there with the belief that Mr. Hemby wasn't there. So how can he be stalking him, intending to intimidate or harass him? He believed he wasn't there. And as soon as he found out, well, because he saw Mr. Hemby's wife, he was told to leave. He left. But let's go on the assumption that that was one act. Okay. No, I'm throwing off my game. That's what we do fairly well up here. I apologize for that. That's fine. I'd much rather have questions than just talk. I want to address what she wanted to hear. I think it is really important to talk about the McDonald's overhear conversation. Why? Because there is absolutely no pleading, no sufficient pleading to show that Mr. White had anything to do with it, that he was there, that he organized it, that he even knew it happened until afterwards. We are talking about a very small town where people hang out at the McDonald's and you might pick up some news there like you do at the gas station. Everyone who does that is not stalking. It's just happenstance. There's no pleadings to allege that he sent his wife there to gain information. And it seems as if based on the testimony that was actually presented before the judge, actual evidence presented, that it just was an accident that that information was overheard by a Mr. White's wife. In fact, it was bad information at that. So we can remove that? Absolutely. Okay. So that one's closed. We'll throw that down. That was fine. So we still have a funeral home. So let's call this funeral home one and incident, even though I'm not completely conceding that. But just for the sake of argument, let's talk about these other things that don't even get close. I want to find the second act of stalking. And it seems to change and still seems to be changing what the second act of stalking is alleged to have been. The release of public information to a news source, which has never been proven to have been done by Mr. White, not even really alleged properly that it was done by Mr. White. And I don't care if he did it or not. That's free speech. He doesn't have to have a good intent to speak or to release information. It's simply news. Is conduct speech? Absolutely. Absolutely. So the conduct of him, let's say he contacted a reporter. The conduct alone is speech. Yes. In your argument. In my argument, yes. Specifically, in this case, because the stalking act defines what counts and specifically excludes speech with very limited exceptions. And this does not fall in those exceptions. They're trying to argue now that it was his bad intent. He was trying to humiliate him because he wanted to intimidate him. And any reasonable person would have been embarrassed by this news in the newspaper. And had you allowed him to present evidence, Henby would have told you how embarrassed he was that this was in the paper. Well, first of all, Henby's somewhat of a public figure in the paper all the time. So being in the paper now. Why do you say that? Because he's a state police officer in a small town area. Very well known. Is that in the record, though, as far as the pointings go? That he's a state police officer? No, that he was a public figure. You didn't argue public figure. No, I did not argue that. My argument is that it's news. Just like it's news when, you know, there's a DUI stop or a murder. Someone's been arrested and charged. This is an arrest, a misdemeanor charge for a violation of a technical department or professional regulations issue. It's really not that embarrassing. It's not like his mugshot was put on the front page of the paper and said, look here, sex offender. That didn't happen. Usually mugshots are not put in the paper for such a minor thing. It depends on where you're in. It all means a small town without a lot of news. They might not put my mugshot in there. They might. They might. And that's not Mr. White's responsibility. He's not the publisher of the paper. He didn't make the choice about how that information was presented. We don't even have strong pleading allegations connecting him to that. I don't think there's any pleading allegations anyway, even if there were. That is not an act of conduct under the Stalking Act. It's 100 percent protected by the First Amendment, even had he done it. And even the pleading stage doesn't establish enough to go forward on that. Taking it in the light most favorable to Mr. Hinby doesn't get you there. That doesn't mean it's a free-for-all and anything he says is sufficient to proceed. And keep in mind, he was allowed to amend this document, I believe, four times, which is a little bit confusing to me because more than once the phrase, dismiss with prejudice, was put in writing. That means we're not talking about this anymore. And yet he was given more opportunities to amend and amend and amend and still never met the standard that was necessary. What that ends up being is here we are and five years later still talking about the same issue. They still haven't gotten it done correctly. They still haven't met the burden that they have in order to proceed further than they've already gone. And we're still here. Let me ask you a couple of questions about that. So Mr. White is the investigative officer that turned him in, is that right, to the Coles County? I don't know how he would characterize turn him in. He did make a point to the Coles County. He presented that evidence. Yes. And charges were brought as a misdemeanor, is that correct? That's correct. And those charges were dropped. And it was then Mr. White in his capacity as the investigative officer that issued the press release? That is their argument. The record does not support that in any way, shape, or form. Okay. How does the record not support that? I'll tell you. First of all, the charges were not dropped in a tight manner close in time to the time that they were brought. He was charged with a misdemeanor. Then the Department of Professional Regulation got involved with it. That process went on. He was actually fined, I think, $1,000 by the Department of Professional Regulation and told to stop doing something he was doing. It is that down the road quite some time, well after the arrest. Is that all in the record? Okay. Absolutely. There's even a letter from the state's attorney saying the reason we did not continue on with the criminal prosecution is because it's duplicative. This has already been done. The Department of Professional Regulation has dealt with them. I'm concerned that you're into the evidence. This was a motion to dismiss. The judge heard all of this evidence early on in the motion to make it. That concerns me because what stage are we at right here today? Aren't we at the pleading stage? I say we're not, no. Wasn't this dismissed under 2-619? Based on the fact that it had already been decided on evidence that had been heard by the court. It was a combined motion to the respondent, you, which I believe was in 2-619. So that goes to the pleading itself, the allegations of the pleading. So now you're into the record. I believe Justice Cates is on to a point I want to pursue. And that is that originally there was an emergency order, and that's where evidence was heard? Or evidence was heard on a rehearing of the emergency order? Evidence was heard on the rehearing of the emergency order. Lengthy evidence. In fact, so lengthy that the trial judge at that time said, we don't need to have a plenary hearing on this because I've got all the evidence that would be presented at that. We vacated the entry of the emergency order. Correct. So he vacated the emergency order. Absolutely. So there's never been an order entered in. It's been repleted and then dismissed on the third amendment complaint. Is that essentially what's happened? Essentially that's what happened. But the reasons that they were dismissed on the amended pleadings was not just based on, not based on evidence. It's based on the fact that all that evidence had been heard and a ruling had already been issued. There was law of the case on these matters every time it was replete. So it's not just as simple as a pleading issue. But I think to be fair to Justice Moore's question, there were separate orders issued for each of the complaints. So there is an order out there, and I don't have it in front of me, unfortunately, for the second amended complaint. It was dismissed on the pleading, not on an evidentiary hearing, but on the pleading. Is that correct? That is correct. And that is the order that I believe says they found a predicate act of stalking at the funeral home, but you need two. So then he was allowed to amend to the third. So it's not like we just have one order. We have multiple orders. Based on the pleadings. So we are at a pleading stage, not an evidentiary stage, is my understanding of the record. I think that it is kind of a combined issue because the reason they were dismissed on the pleadings is because they did not plead anything new that had not been pled prior to the hearing at which the evidence was taken. But you would agree as an appellate court under 2-615 or 2619 or the combined motion 619.1, we're bound by the pleadings, and we have to give the pleadings a look in the light most favorable to the plaintiff. I would, for the sake of argument today, I can agree with you on that point and still show that it's there. It's sufficient and happened all along.  And that's why I keep bringing up the fact of this prior order. Because if the prior order says there's one act, that's the law of the case, as you say. So the second act, that's why I keep asking. If we assume that the funeral home was the first act by this order, and I think it was June, then they claim the second act was this intentional mean dissemination of the mug shot and everything else. At least that's how I read the pleadings. What do you say to that? I say that the facts taken in the light most favorable to Mr. Hemby still show that that is not an act of conduct. And that it doesn't meet the standard in order to proceed to anything further. And that the trial court was correct in that. So the stocking talks about embarrassment, does things done with the intent to embarrass. How about the issuance of a mug shot to a small town? I mean, are mug shots available? Do you have to get one? Do we know? Do we know from these pleadings? I'm not sure that I understand that question. What you mean by available? Well, in our town we don't see many mug shots. And I'm not sure about all of them. But certainly public figure was not planned or responded to by you. It was not argued. Which gives us a different standard, a different look. So we have, at least according to the pleadings, an ordinary man who, Richard White, goes to Coles County Sheriff. He gets a charge. And then, according to the pleadings, he goes to the Daily Mail and gets press releases issued for the purpose of embarrassing Mr. Penby. And you don't think that falls within the act of stalking? My argument is that it does not fall within the act of stalking. It is a matter of public record. It is not. The standard is whether a reasonable person would be embarrassed by that. The judge specifically ordered in one of his orders that a reasonable person would not be embarrassed by that. This is a technical violation of Department of Professional Regulation thing. This is certainly not destructive of someone's reputation by any stretch. I can certainly see a context in which it could be absolutely devastating. Like, for example, you're accused of being a sex offender all over the front page of the paper, and everybody knows you're not. In this case, it's a mug shot and a charge for investigating without a license, which is a misdemeanor and hardly humiliating. And it's true. And it's true. Aren't we here really to determine whether the court ruled on this pleading, the Third Amendment complaint, as to whether, in the first paragraph of its order, was the issuance of the news release motivated by personal hostility? I mean, you just said that the court made a finding that that allegation did not constitute a second act. And it's July 5th, 2014, the court said. That's not it. Yeah, they said very clearly this is not an act. Right. It's just not going to be stopping. It's just not. There's no second predicate act. Correct. They've been very clear all along that no matter how many times it was changed, what the second predicate act was alleged to be, every time the judges said, no, that's not one either. Not one either. And oddly has said, this is dismissed with prejudice, which should be the end of it. And then you're given 28 days to amend, which is the weirdest thing to me. But it went on. And then amendments were made. And they haven't been any better. Or they're no more supported. There's just nothing else there. It's putting a different number paragraph on essentially the same information and trying to shove it through again on a point the judge had already long since ruled on. And it's gone on for so long that I can't disagree that there's a vendetta in this case. However, I don't think it is Mr. White against Mr. Henby. I think it's the other way around. And if you read some of the things that Henby testified to in the motion to reconsider, the original order, he says that Henby, when asked to leave, or Mr. White, when asked to leave the funeral home, smirked at him like a smartass. That doesn't, okay, smirked at him like a smartass. I don't know exactly what that means. I can kind of picture it. And then he also looked at him with crazy eyes like he was having a mental episode. I think we know where the vendetta is. It's one that's been dragging on for five years. Well, he doesn't have to invest so many resources in defending something that the court has repeatedly said is not good enough. And even given a handbook and a map, they haven't been able to make it good enough. And now here we are at the appellate court for you to say whether or not he's had enough bites of the apple here and still come up short. He has had enough bites of the apple. He has still come up short. And every amendment that he has made has wanted to bring in more evidence to support a claim that the trial court has already said will not qualify as an act of conduct. It doesn't matter how much evidence you have. Could you just spend a moment on the issue of the subpoena? I could. And I actually in my brief said that I didn't think it was appropriate for us to respond to that because that was the Illinois State Police and the Attorney General's office handled that. And so my response was if you would like me to respond, I'd be happy to. I would need like 14 days to do that. I did have some thoughts, which is probably going to get me in trouble if I'm just having thoughts while I'm in here and telling you what they are. But let's see. Well, let me ask you a question so that you're not upset. Thank you. The information that they seem to want is about your client from the Illinois State Police. What do you believe, if any, would be the relevance of that information coming out of a state agency? I can't begin to imagine that there's any relevance. And when the Attorney General said that it is too broad, there are going to be lots of documents. I don't know what those documents are, but both men worked together at the ISP for years. Hemby was Mr. White's supervisor. Of course there's going to be thousands of reports where they're both involved about any number of things. But it also seems to me that if there are documents internally at the ISP involving these two, but they've never been released anywhere else, how in the world does that amount to an act of stalking? Hemby doesn't even know that. So I don't see it. It's a phishing expedition, and it's pointless. But I didn't prepare an argument to that. No, I appreciate that. It wasn't. I just was interested in your thoughts on relevance. Yeah. I don't see relevance. I'd be happy to brief it if you'd like me to. That's okay. Okay. Thank you very much. Are there any other questions? We would just ask that you would affirm the trial court's order and just put an end to this by the end of the trial. Thank you. Thank you. Thank you for your argument. Okay. Mr. Roberts, do you have any rebuttal? Thank you for your briefing, Judge. First of all, I should point out we are at a pleading stage in the case, so the standard of review has to be de novo. Counsel wants to argue facts here before the court. That's not appropriate. First, she says that as soon as Mr. White saw Mr. Henry's wife, he left. Well, that's not accurate at all. Then she comes back with a statement that White looked at Henry with crazy eyes. So we're not here to argue facts about this. We're looking at the pleading. We're making a determination. Is there an allegation of two acts? And we take the position that Mrs. White was alone at McDonald's, and that was not an act at McDonald's, but that when Mr. White talked to his wife after that, he was monitoring Mr. Henry's car, albeit it was wrong. The act at Neil's funeral home is an act. The contact that White had with Deputy Hanisch, to get Deputy Hanisch. You remember, under a stalking no contact allegation, an allegation that someone acts under the action of a third party is an appropriate allegation, and that's the allegation we make in this case. Hanisch took the information to the papers, but he did that at the request of Mr. White. Mr. White's conduct was not for a legal purpose, not for a legitimate purpose, and I disagree with counsel's statement that it was 100% protected by the First Amendment. The First Amendment is not absolute in that regard. Officer White didn't have a legitimate purpose. It was done for anger. I think the court at the trial level recognized that, and it should have been found to be the second act in the case. Judge, the only one I remember being dismissed for prejudice was the Second Amendment complaint, but we filed a motion for reconsideration of that denial, so the trial court maintained its jurisdiction. And the trial court granted our reconsideration of the denial of the Second Amendment complaint, which was done with prejudice. So when we reconsidered it, the trial court had jurisdiction again, and then we filed our Third Amendment complaint, which the trial judge again dismissed with prejudice, and we appealed from that matter. So there was jurisdiction in the court all the way through. I disagree with counsel's statement that this is five years after the fact. The fact of the matter is that we're talking about 2013 occurrences, and 2013 was only a couple of years ago. It's taken quite some time with all the roadblocks that the defense has put up in this case to try to get an issue, but we're entitled to make that effort, and we thank you today for your consideration. We ask you to reverse the trial court because, obviously, there's a need to get to the facts questions in this case, and we've alleged sufficient facts of conduct of Mr. Bight for which a hearing should be had, and we should obtain the discovery from the state police. Not a fishing expedition, but remember, we found out about Mr. Hanisch taking the materials to the newspaper through a deposition of Mr. Hanisch in a federal case called Hinkle v. Bight, and we wouldn't have known about that except for discovery in a related case, related in the sense that it stems from the Hinkle matter that I started my argument with earlier this morning. Thank you for your time today. Thank you, Mr. Roberts. Okay, this matter will be taken under advisement, and a disposition will be issued in due course. Thank you, counsel, for your arguments.